## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PAMELA JUDITH BANNO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **15 C 8291** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Banno ("Banno") has sued Experian Information Solutions, Inc. ("Experian") alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Banno and Experian have filed cross-motions for summary judgment. For the reasons stated herein, Banno's motion for summary judgment is denied, and Experian's motion for summary judgment is granted.

### Factual Background[1]

In 2003, Banno purchased a residential property in Joliet, Illinois ("the Joliet property"). *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 5, ECF No. 67. Banno financed the purchase by taking out a mortgage. *Id.* The mortgage was eventually transferred to Ocwen Loan Servicing ("Ocwen"), a corporation that services mortgage loans and furnishes data to credit reporting agencies. *Id.*; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2, ECF No. 80.

Experian is a credit reporting agency that compiles consumer credit information, including consumer bankruptcy information. Def.'s LR 56.1(a)(3) Stmt. ¶ 2. Experian obtains bankruptcy information through its public records vendor, LexisNexis Risk & Information

---

[1] The following facts are undisputed except where otherwise noted.

Analytics Group, Inc. ("Lexis"). *Id.* ¶ 17. When Experian learns from Lexis that a consumer's bankruptcy has been discharged, any account that Experian has recorded as included in the consumer's bankruptcy is automatically updated to reflect the discharge, as well as to report a $0 recent balance and no monthly payment obligation. *Id.* ¶¶ 22–23.

Experian has several policies in place for handling disputes with consumers over the accuracy of the information in their files. When a consumer contacts Experian with a nonfrivolous dispute, Experian logs the dispute and reinvestigates it. *Id.* ¶ 24. To reinvestigate a dispute, Experian first decides whether the dispute can be resolved "internally"—that is, based on Experian's internal policies and the information provided by the consumer. *Id.* ¶¶ 24–25. When a dispute is resolved internally, Experian sends a Dispute Response Notification (DRN) to any relevant data furnishers in order to notify them of any changes made as a result of the dispute, as well as the basis for the changes. *See id.* ¶¶ 26–27. By contrast, when a dispute cannot be resolved internally, Experian sends an Automated Consumer Dispute Verification (ACDV) to data furnishers to request additional information about disputed accounts. *Id.* ¶ 26. DRNs and ACDVs convey information using "industry standard codes, as well as free form text fields to communicate the nature of the consumer's dispute." *Id.*

In October 2013, Banno filed a Chapter 13 bankruptcy petition. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6. By that time, according to her bankruptcy filings, she owed Ocwen $173,549 on her mortgage. Def.'s LR 56.1(a)(3) Stmt. ¶ 7. Banno's bankruptcy plan required her to surrender the Joliet property to Ocwen in full satisfaction of this debt. *Id.* ¶ 12. Despite this requirement, Banno continued to reside at the Joliet property throughout the period relevant to this case. *Id.*[2]

---

[2]    Banno moved out of the Joliet property and physically surrendered it to Ocwen in December 2015, several months after this lawsuit was filed. *Id.*

On May 15, 2014, the bankruptcy court entered a discharge order in Banno's bankruptcy case. *Id.* ¶ 13. The next day, Lexis notified Experian of the discharge. *Id.* ¶ 31. Upon receiving this notification, Experian automatically updated its records of Banno's account with Ocwen to reflect that the account had been discharged in bankruptcy and to report a $0 recent balance. *Id.* ¶ 32.

On June 26, 2014, Experian received a dispute letter from Banno, as well as a copy of her bankruptcy schedules. *Id.* ¶ 33; *id.*, Ex. D. The letter asked Experian to "update [Banno's] credit file(s) to reflect the discharged status of the debts" included in her bankruptcy. *Id.*, Ex. D, at 2. Upon processing this dispute, Experian found that, with the exception of one department store account, all of the accounts identified on Banno's bankruptcy schedules were already reporting as discharged in Banno's consumer file. Def.'s LR 56.1(a)(3) Stmt. ¶ 35. Experian updated the department store account to reflect the discharge and to list a $0 recent balance. *Id.* ¶ 34; *id.*, Ex. F, at 3. After updating this account, Experian sent the department store a DRN to notify it of the changes made. Def.'s LR 56.1(a)(3) Stmt. ¶ 36. Experian also sent Banno an abbreviated consumer disclosure to show her the changes. *Id.* ¶ 37; *id.*, Ex. F.

Over a year later, on July 16, 2015, Banno obtained her annual credit report from the Internet.[3] Def.'s LR 56.1(a)(3) Stmt. ¶ 38. The report listed Banno's Ocwen account as "Discharged through Bankruptcy Chapter 13," reflected a $0 recent balance, and showed no current monthly payment obligation. *Id.* ¶ 39; *id.*, Ex. H. The monthly details in the "Account

---

[3] According to Banno, this was not the first time she pulled her annual credit report since her bankruptcy was discharged in May 2014. She states that she also obtained her Experian credit report "[i]n early 2014 after receiving her discharge." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 23. The Court, however, disregards this statement because Banno supports it only with a citation to her original complaint, rather than with a citation to evidentiary materials. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (explaining that a nonmovant cannot defeat summary judgment simply by resting on her pleadings and must instead point to evidence in the record to support her claims).

3

History" section of the report, however, listed an account balance of $173,170 and a monthly payment obligation of $1,518 on Banno's Ocwen account for each month from December 2013 to April 2015. *Id.*, Ex. H, at 6.

On August 11, 2015, Experian received a second dispute letter from Banno, along with another copy of her bankruptcy schedules. Def.'s LR 56.1(a)(3) Stmt. ¶ 41; *id.*, Ex. E. The letter again asked Experian to "update [Banno's] credit file(s) to reflect the discharged status of the debts" included in her bankruptcy. *Id.*, Ex. E, at 2. In addition, the letter stated: "[The Ocwen] account was discharged in my bankruptcy . . . . The account status should be marked as 'discharged' and [t]here should be no derogatory reporting after the bankruptcy filing date." *Id.* According to Banno, the letter's reference to "derogatory reporting" was sufficient to put Experian on notice of a dispute regarding the information in the Account History section of her Ocwen account. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 41, 53, ECF No. 83. Experian disagrees with this assertion. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 41, 53.

Experian processed Banno's second dispute letter within a few days after receiving it. *Id.* ¶ 43; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 28. Because all of the accounts that had been included in Banno's bankruptcy were already reporting as discharged and listed a $0 recent balance, Experian concluded that nothing in the accounts needed to be modified in response to the letter. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 44.[4] After processing the letter, Experian sent a DRN to Ocwen. *Id.* ¶ 45. Neither Banno's dispute letter nor her bankruptcy schedules were attached to

---

[4] Although Experian maintains (and Banno does not dispute) that Banno's accounts were already accurately reporting as discharged and with a $0 recent balance, Experian's agents nevertheless "reapplied updates" to Banno's accounts after receiving the second dispute letter. *See, e.g.*, Def.'s LR 56.1(a)(3) Stmt. ¶¶ 43–45. It appears that that these updates were reapplied merely to confirm that the relevant accounts were reporting as discharged and with a $0 recent balance in Experian's computer systems; nothing in the parties' filings indicates that these "updates" resulted in substantive changes to the information in Banno's consumer file. *See id.*; Def.'s Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 31, ECF No. 89.

the DRN. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 29. Experian also sent Banno a new copy of her consumer disclosure. Def.'s LR 56.1(a)(3) Stmt. ¶ 45. Although the Ocwen account was reported as discharged and listed a $0 recent balance in one section of the consumer disclosure, the Account History section still listed a balance of $173,170 and a scheduled payment amount of $1,518, this time from December 2013 to May 2015. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 33.

According to Experian, the information in the Account History section of a consumer disclosure is included merely to inform the consumer of what information her creditors are reporting to Experian. Def.'s LR 56.1(a)(3) Stmt. ¶ 49. This information is not included in credit reports that Experian provides when a creditor requests the consumer's credit information. *Id.* ¶ 50.[5] Experian sometimes uses summaries of the information in the Account History section to create a certain product that gives specialized information about a consumer's "balance trends." *Id.* ¶ 48. But only a small number of its clients purchase this product. *Id.* ¶ 51. Furthermore, when a client purchases this product with respect to a specific consumer, the purchase is reflected in the consumer's file. *Id.* Nothing in Banno's file indicates that any Experian client ever purchased this product with respect to her credit information. *Id.* ¶ 52.

---

[5]     Banno does not expressly state whether she admits or disputes this fact. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 50. The fact is therefore deemed admitted pursuant to Local Rule 56.1. *See* LR 56.1(a); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Moreover, even if the Court were to construe Banno's response to this fact as a denial, the fact would still be deemed admitted because she has not supported the denial with sufficient evidence. *See, e.g.*, *Smith*, 321 F.3d at 683. The only evidence she cites in response to this statement of fact is deposition testimony in which Experian's corporate representative stated: "Well, the account history section that's listed on the disclosure . . . would not be reported to a third party. There's not any sort of product that has all that information. . . . I don't know if anybody's ever requested it, but we don't have a product to provide all of that. So if we don't have a product that will satisfy that request, then they wouldn't be able to get it." Def.'s LR 56.1(a)(3) Stmt., Ex. B, at 172:16–20, 173:5–8. This testimony only underscores, rather than undermines, Experian's assertion that the information in the Account History section is not reported to third-party creditors.

**Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The nonmovant bears the burden of production and cannot avoid summary judgment by "simply rest[ing] upon the pleadings." *Siegel*, 612 F.3d at 937.

In reviewing a motion for summary judgment, a court "must construe all facts and reasonable inferences in favor of the nonmoving party." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). But "[i]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Id.* (internal quotation marks omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted).

**Analysis**

Banno claims that Experian violated the FCRA by mishandling information regarding her Ocwen account in numerous ways. First, she alleges that Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to ensure accurate credit reporting. In addition, she alleges that Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation into her disputes, failing to provide Ocwen with proper notice of her disputes,

failing to consider all relevant information in reinvestigating her disputes, failing to correct any information found to be inaccurate, and re-reporting disputed information without first notifying Banno or certifying the information's accuracy. Compl. ¶¶ 120–24, ECF No. 1; *see also* Pl.'s Mot. Summ. J. ¶ 6, ECF No. 79. FCRA imposes civil liability for the negligent and willful violation of these provisions in 15 U.S.C. §§ 1681o and 1681n, respectively.

In moving for summary judgment, Experian argues, among other things, that it is entitled to judgment as a matter of law because Banno has not raised a triable issue of fact as to (1) whether she suffered actual damages to support a negligence claim or (2) whether Experian violated the FCRA in a willful manner. For the reasons that follow, the Court agrees that no reasonable jury could find in Banno's favor with respect to either of these issues. Experian is therefore entitled to summary judgment in its favor.

## I.  Section 1681o Negligence Claim

The FCRA was enacted to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Private citizens may file civil actions to enforce the FCRA's provisions. *See* 15 U.S.C. § 1681p. The FCRA, however, is "not a strict liability statute." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). Rather, a plaintiff bringing a claim under the FCRA may hold a defendant liable only for negligent or willful violations of the statute. *See id.*; *Safeco*, 551 U.S. at 53 (citing 15 U.S.C. §§ 1681o(a), 1681n(a)).

Turning first to the claim that Experian negligently violated the FCRA, a plaintiff is entitled to recover for a defendant's negligent violation only if she can show that she sustained actual damages as a result of the violation. 15 U.S.C. § 1681o(a); *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607–08 (7th Cir. 2005); *Sarver*, 390 F.3d at 971. "The FCRA does not presume damages; instead . . . the [plaintiff] must affirmatively prove that she is entitled

to damages." *Ruffin-Thompkins*, 422 F.3d at 610; *accord Sarver*, 390 F.3d at 971. If a plaintiff cannot prove some form of actual damages, such as financial injury or emotional distress, then she is not entitled to present negligence-based FCRA claims to a jury. *See, e.g.*, *Ruffin-Thompkins*, 422 F.3d at 610.

Banno has offered no evidence from which a reasonable jury could find that she suffered actual damages as a result of Experian's alleged violations of the FCRA. She asserts that she can prove actual damages because the alleged inaccuracies in her consumer file "may affect her credit score, and . . . affect the price and availability of credit on her existing accounts." Mem. Supp. Pl.'s Mot. Summ. J. at 22, ECF No. 82. But she cites no evidence in support of this assertion. On the other hand, Experian has presented unrebutted evidence that the information in the Account History section of Banno's credit file was never provided to any third parties. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 50, 52; *see Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833 (7th Cir. 2004) (holding that plaintiff failed to provide evidence of actual damages under the FCRA where there was no evidence of disclosure to third parties), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Nonetheless, Banno states that she has sufficiently "pleaded" an issue of fact as to actual damages, *id.* at 21, and that it is "premature [to] brush aside [her] allegations of actual damages," Pl.'s Reply at 7, ECF No. 90. At this stage, however, Banno bears the burden of producing evidence to support each element of her claims, including the element of actual damages; she cannot survive summary judgment by simply relying on her pleadings, and conclusory assertions of "emotional distress," without more, are insufficient. *See Siegel*, 612 F.3d at 937; *Ruffin-Thompkins*, 422 F.3d at 607–10 (noting that a party opposing summary judgment "may not rest on [her] pleading," and affirming summary judgment in defendant's favor where plaintiff failed

to present sufficient evidence of actual damages to support her FCRA claims); *see also Jackson v. Experian Info. Sols., Inc.*, No. 15 C 11140, 2017 WL 635148, at *3 (N.D. Ill. Feb. 16, 2017) (granting summary judgment in defendant's favor on FCRA claims where plaintiff failed to present sufficient evidence of actual damages); *Aleksic v. Clarity Servs., Inc.*, No. 13 C 07802, 2015 WL 4139711, at *8–11 (N.D. Ill. July 8, 2015) (same). In short, because Banno has failed to point to evidence of actual damages—financial, emotional, or otherwise—she is not entitled to pursue her claims on the theory that Experian negligently violated the FCRA.

Banno nevertheless contends that her negligence claims should be permitted to proceed, even without proof of actual damages, because she seeks not only monetary relief but also an injunctive remedy. Courts within this district, however, have held that injunctive remedies are not available in private causes of action brought under the FCRA. *See Pappas v. Experian Info. Sols., Inc.*, No. 15 C 8115, 2017 WL 635145, at *5 (N.D. Ill. Feb. 16, 2017); *Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 625 (N.D. Ill. 2011); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 340 (N.D. Ill. 2002). In so holding, courts have reasoned that the FCRA "sets forth a detailed remedial scheme" permitting private plaintiffs to seek only monetary relief and vesting the Federal Trade Commission with the exclusive authority to seek injunctive relief. *Novak*, 782 F. Supp. 2d at 625 (citing §§ 1681n, 1681o, 1681s(a)); *accord Pappas*, 2017 WL 635145, at *5; *In re Trans Union*, 211 F.R.D. at 340; *see also Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("The affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief [such as attorney's fees], persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."). Banno has developed no arguments to challenge the reasoning that underlies these

holdings, and she cites only a single district court case in support of her conclusory assertion that she may proceed with her negligence claims without proof of actual damages. *See* Mem. Supp. Pl.'s Mot. Summ. J. at 22.[6] As such, the Court rejects Banno's assertion that her prayer for injunctive relief excuses her failure to marshal evidence of actual damages.

## II.    Section 1681n Willful Violation Claim

As explained above, Banno cannot proceed with her FCRA claims under §§ 1681e(b) and 1681i on a § 1681o negligence theory, because that section only provides for actual damages (which she cannot show). But, in addition to a negligence claim under § 1681o, Banno asserts a claim for willful violations under § 1681n(a), which in turn provides for statutory damages and punitive damages, as well as actual damages. 15 U.S.C. § 1681n(a); *Safeco*, 551 U.S. at 53.[7] Accordingly, Banno still may survive summary judgment if she can present evidence that Experian willfully violated §§ 1681e(b) and 1681i. *See Ruffin-Thompkins*, 422 F.3d at 610 (citing 15 U.S.C. § 1681n).

---

[6]    The case Banno cites is *Handrock v. Ocwen Loan Servicing, LLC*, 216 F. Supp. 3d 869, 876 (N.D. Ill. 2016). In *Handrock*, the court noted in dicta that the plaintiffs' FCRA claims could have survived a motion to dismiss even without allegations of actual damages, because the plaintiffs sought not only monetary damages but also injunctive relief. *Id.* The court did not discuss whether the FCRA permits private plaintiffs to seek injunctive relief; nor did it cite any other case in which a plaintiff had been permitted to pursue an injunctive remedy for a FCRA violation. *Id.* In light of the other cases cited *supra*, Banno's reliance on *Handrock* is unpersuasive.

[7]    Experian suggests that Banno's failure to offer evidence of actual damages precludes her from proving not only a negligent violation of the FCRA, but also a willful violation. Def.'s Reply at 5, ECF No. 88. The case law Experian relies upon for support, however, holds only that a plaintiff cannot establish a willful FCRA violation if she cannot prove that the defendant's conduct was proscribed by the FCRA. *See, e.g.*, *Ruffin-Thompkins*, 422 F.3d at 608 (holding that, because the district court had correctly found that the defendant's duty to reinvestigate a dispute under § 1681i was never triggered, the plaintiff *a fortiori* could not prove a willful violation of § 1681i). In other words, contrary to Experian's suggestion, the cases it cites do not hold that a failure to prove actual damages precludes a plaintiff from proving a willful FCRA violation. Indeed, such a rule would be inconsistent with the FCRA's remedial scheme, which specifically permits a plaintiff to recover statutory damages in lieu of actual damages for willful violations. 15 U.S.C. § 1681n(a)(1). As such, Banno's failure to offer proof of actual damages is not dispositive of her claims for statutory damages based on Experian's allegedly willful FCRA violations.

Willful violations are violations that are made knowingly or with "reckless disregard" of the FCRA's requirements. *Safeco*, 551 U.S. at 57–58. A defendant acts in "reckless disregard" of the FCRA where "[its] action is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. For the reasons that follow, the Court concludes that, on the current record, no reasonable jury could return a verdict in Banno's favor as to this issue.

### A. Section 1681e(b)

First, Banno argues that Experian willfully violated § 1681e(b). Section 1681e(b) requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer report. 15 U.S.C. § 1681e(b). A procedure need not be perfect in order to be "reasonable" for purposes of § 1681e(b). *See, e.g.*, *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747–48 (7th Cir. 2015). As such, even if a procedure results in the occasional reporting of inaccurate information, the procedure may nevertheless be reasonable as a matter of law where the credit reporting agency relies on reasonably reputable sources of information and where alternative procedures would be unduly burdensome. *See id.*; *Sarver*, 390 F.3d at 971–73.

Here, Banno contends that Experian's procedures were unreasonable under § 1681e(b) because they failed to ensure the accuracy of the Account History section of consumer files for individuals whose accounts have been discharged in bankruptcy. Mem. Supp. Pl.'s Mot. Summ. J. at 17–18; Pl.'s Reply at 5. There are several reasons, however, why no reasonable jury could find that Experian willfully violated § 1681e(b) on this basis.

11

As an initial matter, Banno has presented no evidence that the information in the Account History section of her consumer file was ever disclosed to a third party. The Seventh Circuit has held that "where there is no evidence of disclosure to a third party, the plaintiff cannot establish the existence of a consumer report" for purposes of § 1681e(b). *Wantz*, 386 F.3d at 833. In turn, "[w]ithout such a report, there [can] be no duty to follow reasonable procedures regarding the report." *Id.*; *accord Sgouros v. Transunion Corp.*, No. 14 C 1850, 2016 WL 4398032, at *4 (N.D. Ill. Aug. 18, 2016).

It is undisputed that the information in the Account History sections of consumer files is not included in credit reports that Experian provides to third-party creditors. Def.'s LR 56.1(a)(3) Stmt. ¶ 50. In addition, although summaries of Account History information are disclosed as part of one of Experian's credit reporting products, Banno's consumer file indicates that no third party ever purchased such a product containing her credit information. *Id.* ¶ 52. Without evidence of a disclosure to a third party, Banno cannot prove to a jury that Experian violated § 1681e(b), much less that Experian did so knowingly or recklessly. *See Wantz*, 386 F.3d at 833.

Second, even if Banno could show that the information in the Account History section of her consumer file had been disclosed to a third party, Experian would still be entitled to summary judgment on her claim, because Banno has failed to establish that Experian's decision to report such information was in knowing or reckless disregard of the FCRA. First, Experian argues that the $173,170 account balance listed in the Account History section was not "inaccurate" under § 1681e(b), but rather accurately reported Banno's *in rem* liability to Ocwen during the period from May 2014 (when Banno's bankruptcy was discharged) to December 2015 (when Banno moved out of her house and physically surrendered the Joliet property to Ocwen

12

per her bankruptcy plan). *See* Def.'s Mem. Supp. Mot. Summ. J. at 13 n.5, ECF No. 66 ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991))).

In response, Banno argues that Experian had no authority to report *in rem* liability in her Account History section and that, in any event, she had no *in rem* liability to Ocwen after the bankruptcy discharge in May 2014. *See* Mem. Supp. Pl.'s Mot. Summ. J. at 7–8. But Banno cites no authority from the Seventh Circuit for these propositions. *See id.* As such, Banno cannot show that Experian's decision to report such information was in knowing or reckless disregard of the FCRA. *See Pappas*, 2017 WL 635145, at *4 (holding that defendant did not willfully violate the FCRA where its conduct contravened neither "the plain language of the FCRA" nor "any controlling legal authority in this Circuit").

What is more, even assuming *arguendo* that the information in the Account History section was inaccurate, Banno has not shown that the inaccuracy was the result of a failure to follow reasonable procedures in collecting consumer credit information. In fact, in *Childress v. Experian Information Solutions, Inc.*, the Seventh Circuit held that Experian's policy of collecting consumer bankruptcy information by relying on Lexis was reasonable as a matter of law under § 1681e(b), because Lexis is generally recognized to be a reliable source of such information. 790 F.3d at 747–48.

Nevertheless, Banno suggests that her case is distinguishable from *Childress* because reliance on Lexis "routinely produce[s] inaccurate information" in the Account History section of consumer files. *See* Pl.'s Reply at 5. But the only evidence that Banno musters for this sweeping proposition is the information concerning the Ocwen loan in her own file. *See* Pl.'s LR

56.1(b)(3)(C) Stmt. ¶ 33. There is simply no evidence that Lexis provides inaccurate Account History information on a regular basis, or (if it does) that Experian was aware of this practice. As such, a jury would be hard-pressed to find that Experian's procedures were unreasonable. *See Sarver*, 390 F.3d 969, 972 (7th Cir. 2004) ("[A] mistake does not render the procedures unreasonable."). Furthermore, even if a jury could find that Experian's procedures were unreasonable, given *Childress*, the Court concludes that a reasonable jury would not find that Experian's procedures violated the FCRA in a way that was knowing or reckless, rather than "merely careless." *Safeco*, 551 U.S. at 69; *see also Smith v. Trans Union, LLC*, No. 13 C 9119, 2015 WL 1188189, at *6 (N.D. Ill. Mar. 12, 2015) (holding that no reasonable jury could find that defendant willfully violated § 1681e(b) where defendant followed procedures that had been held to be reasonable under Seventh Circuit precedent).

For all of the above reasons, Banno has failed to create a genuine dispute of material fact as to whether Experian willfully violated § 1681e(b). As such, Experian is entitled to summary judgment on Banno's § 1681e(b) claim.

## B.    Section 1681i

Next, Banno contends that Experian willfully violated § 1681i. Section 1681i requires a credit reporting agency to "conduct a reasonable reinvestigation" of disputed information once a consumer "notifies the agency" of an inaccuracy. 15 U.S.C. § 1691i(a)(1)(A). In turn, the subsections of § 1681i set forth various requirements governing reinvestigations of such disputed information. For example, § 1681i(a)(2) requires credit report agencies to provide "notice of [a] dispute" as well as "all relevant information regarding the dispute" to the entity that originally provided the disputed information. *Id.* § 1681i(a)(2). In addition, a credit reporting agency must consider "all relevant information" in the course of conducting a reinvestigation, *id.*

§ 1681i(a)(4), and it must delete or modify any information found to be inaccurate or incomplete, *id.* § 1681i(a)(5).

Banno offers two primary arguments in support of her contention that Experian willfully violated § 1681i. First, she argues that Experian willfully failed to conduct a reasonable reinvestigation and send Ocwen "all relevant information regarding [her] dispute" under § 1681i(a)(2) because Experian did not attach her second dispute letter or bankruptcy schedules when it sent Ocwen the DRN in August 2015. Mem. Supp. Pl.'s Mot. Summ. J. at 10–13.[8] Tellingly, however, Banno cites no case law from within the Seventh Circuit holding that a credit reporting agency must attach original dispute letters or bankruptcy schedules in order to fulfill its obligation to send "all relevant information" under § 1681i(a)(2). *See id.* at 12. Furthermore, district courts in other circuits have diverged on this issue. *Compare, e.g.*, *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1075 (C.D. Cal. 2014) (holding that a reasonable jury could find defendant's reinvestigation to be unreasonable under § 1681i(a)(2) where defendant failed to attach relevant documents to an ACDV), *with Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011) ("No language in the statute requires a [credit reporting agency] to forward documents to data furnishers to satisfy its obligation [under § 1681i(a)(2)]."), *and Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1084 (D. Or. 2007) (holding that a reasonable jury could find a violation of § 1681i(a)(2) where defendant failed to attach either copies or a summary of the relevant documents upon sending notice of a dispute).

---

[8] Relatedly, Banno asserts that Experian willfully violated § 1681i(a)(2) because it "provided no information, either in original *or* summary form, to Ocwen regarding Plaintiff's dispute." *Id.* at 12. As Experian points out, however, this assertion is contrary to the factual record. *See* Def.'s Reply at 14. It is undisputed that Experian sent Ocwen a DRN and that DRNs summarize the nature of a dispute and its resolution using industry-standard codes and free-form text fields. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 26–27. Banno points to no evidence suggesting that the DRN sent to Ocwen did not summarize this information or otherwise lacked the information that is typically included in DRNs.

Given the lack of authority within this circuit, in addition to the split of authority across other jurisdictions, Experian's failure to attach Banno's original dispute letter and bankruptcy schedules was careless at worst; it falls short of a knowing or reckless FCRA violation. *See Pappas*, 2017 WL 635145, at *4 (granting summary judgment on FCRA claims and holding that, "[w]ithout any controlling legal authority in this Circuit requiring [credit reporting agencies] to provide underlying documentation to satisfy [§ 1681i(a)(2)]," the plaintiff could not demonstrate a knowing or reckless violation of that provision).

Second, Banno argues that Experian willfully violated § 1681i by failing to consider or correct the information in the Account History section of her Ocwen account in the course of reinvestigating her dispute, as well by failing to request additional information from Ocwen regarding the Account History section. *See* Mem. Supp. Pl.'s Mot. Summ. J. at 14–17. These arguments, too, are unpersuasive. Their principal flaw is that neither of Banno's dispute letters expressly referenced any Account History section within her consumer file. *See* Def.'s LR 56.1(a)(3) Stmt., Exs. D–E. Instead, the letters merely asked Experian to "update [Banno's] credit file(s) to reflect *the discharged status of the debts*" included in her bankruptcy. *Id.* (emphasis added). Upon receiving the letters, Experian fulfilled precisely this request by reviewing and updating the status of Banno's debts. *See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 34, 43–45. A reasonable jury could perhaps find that Experian was negligent in not also reinvestigating the Account History section of Banno's Ocwen account, in light of the second dispute letter's reference to "derogatory reporting." *Id.*, Ex. E, at 2. But no reasonable jury could find that Experian's failure to consider, reinvestigate, or update the Account History section was a knowing or reckless violation of § 1681i, given Banno's failure to expressly reference that section in her letters. *See Jackson*, 2017 WL 635148, at *3 (holding that no reasonable jury

could find that Experian willfully violated § 1681i by failing to reinvestigate information in the Account History section of a consumer's file where the consumer failed to expressly reference the Account History section in his dispute letter).

In sum, Banno has failed to present evidence from which a reasonable jury could find that she suffered actual damages as a result of Experian's actions or that Experian willfully violated the FCRA. As such, she cannot proceed with her FCRA claims, and Experian is entitled to summary judgment in its favor. *See, e.g.*, *Ruffin-Thompkins*, 422 F.3d at 608–10 (affirming summary judgment where FCRA plaintiff failed to present evidence of either actual damages or a willful violation).

### <u>Conclusion</u>

For the reasons stated herein, Banno's motion for summary judgment [79] is denied and Experian's motion for summary judgment [65] is granted. Judgment will be entered in favor of Experian, and this case is hereby terminated.

**IT IS SO ORDERED.**                    **ENTERED    7/20/17**

_____
**John Z. Lee**
**United States District Judge**

17